## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-cr-9-CJN** |
| **MATTHEW BRACKLEY** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Matthew Brackley to 28 months' incarceration, 24 months' supervised release, $2,000 restitution, and the mandatory assessment of $100. The requested sentence sits within the guidelines range of 24-30 months' incarceration (for the agreed upon offense level 17), and 1-3 years' supervised release.

## I.      INTRODUCTION

The defendant, Matthew Brackley ("Brackley"), participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

1

On January 5, 2021, Brackley wrote to his senators imploring them to "stand up to this blatant corruption and support a second term for President Donald J. Trump," and asserting, "the people will." The following day, Brackley stormed the United States Capitol Building and assaulted two law enforcement officers who tried to stop him.

Brackley pleaded guilty to one violation of 18 U.S.C. § 111(a)(1). The government's sentencing recommendation is supported by Brackley's (1) advance to the U.S. Capitol Building via the more violent West side, where he observed police using tear gas grenades to try and disburse the crowd, (2) entering the Capitol through the Senate Wing Door—the initial breach point – during the first wave of the breach, (3) following other rioters as they pushed through police lines in the Crypt and an adjacent hallway, and most significantly, (4) shoving two U.S. Capitol Police officers who tried to stop his advance through the building, thus leading a group of rioters towards the Senate Chamber, and then continuing to confront and push against the next line of police officers in the hallway outside the Senate Chamber.

The government's recommended sentence of 28 months of incarceration and 2 years of supervised release best reflects the gravity of Brackley's conduct.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF No. 25, for a short summary of the January 6, 2021 attack on the United States Capitol by

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.      Brackley's Role in the January 6, 2021 Attack on the Capitol

#### *Pre-Conduct Statements*

On January 5, 2021, Brackley emailed Maine Senators Angus King and Susan Collins, and Missouri Senator Josh Hawley, explaining he was "convinced that our presidential election was compromised by foreign actors and by traitors to our country." He implored them to "stand up to this blatant corruption and support a second term for President Donald J. Trump," adding, "I can assure you that the people will." That evening, Brackley flew from Maine to Washington, D.C.

The following day, January 6, 2021, Brackley sent a message from his work email address to two accountants with the subject line, "No Meeting Today." In the body of the message, Brackley explained, "I am in D.C. to protest the travesty that was our recent elections. See you next week."

#### *Conduct on January 6*

The morning of January 6, 2021, Brackley attended President Trump's Stop the Steal rally on the National Mall.[2] After the rally, Brackley walked to the U.S. Capitol, arriving on the West lawn at about 1:40 pm, dressed in a zip-up black top, gray pants, camouflage hat, and sunglasses (which he later removed indoors); he wore a red, white and blue Trump flag over his back like a cape.[3]

---

[2] *See* Exhibit 1 at p. 6, a selfie-style photo of Brackley on the National Mall created at 9:44 a.m. on January 6, 2021; *see also* Exhibit 2: Photograph of Brackley on the National Mall (towards the bottom left of the screen, facing to the right).

[3] *See, e.g.,* Exhibit 1 at p. 9, a selfie-style photo of Brackley on the West Lawn of the U.S. Capitol created at 1:42 p.m. on January 6, 2021.

He then approached the Lower West Terrace, where he observed rows of bike rack barricades and uniformed police officers preventing people from advancing towards the Capitol. Here, the police officers were faced with a growing number of rioters in the restricted area, the two sides fighting over the establishment and reinforcement of a police defensive line on the plaza with fists, batons, makeshift projectiles, pepper spray, pepper balls, concussion grenades, smoke bombs, and a wide assortment of weaponry brought by members of the crowd or seized from the inaugural stage construction site. Despite the warning and the deployment of riot control agents and impact weapons, few members of the crowd left. Brackley remained in this area as the police fired what appear to be flashbang grenades into the crowd nearby.[4]

Instead of leaving the area in response to police attempts to disburse the crowd, Brackley advanced towards the Northwest stairs, which lay underneath scaffolding erected to construct the inaugural stage. Other rioters climbed on top of the scaffolding and tore open the tarp covering it, which helped the rioters access the stairs beneath the scaffolding. As rioters nearby continued to push against the police line, Brackley ascended the stairs towards the Capitol building.

---

[4] *See* Exhibit 3: Public video at 6:07 (Brackley briefly seen among the crowd towards lower left portion of the image; footage then pans to what Brackley would have seen and experienced near the Lower West Terrace).



*Video of Brackley's advance towards the Capitol Building, Exhibit 4 at 6:36*

From the top of the Northwest stairs, Brackley was able to access the Senate Wing Door, where rioters initially breached the U.S. Capitol building at 2:13 p.m. As rioters continued to climb into the building through smashed out windows on either side of the door, Brackley entered through the door at 2:23 p.m., ten minutes after the initial breach.



*Capitol Security footage of Brackley entering Capitol Building at 2:23 p.m., Exhibit 5*

Inside the building, Brackley turned right down the Senate Wing Hallway and entered the Crypt, where rioters, halted by a line of police officers, chanted phrases including "stop the steal."[5] The rioters eventually overwhelmed the officers, gaining further access to the Capitol. Brackley and several dozen rioters entered a hallway behind the Crypt where they were again stopped by USCP officers. But again, Brackley and the rioters moved past the officers and continued down the hall.



*Capitol Security footage of Brackley advancing at 2:32 p.m. despite police opposition, Exhibit 7*

Brackley reached and ascended a set of stairs that led to the Capitol's Rotunda. There he turned North and walked down a hallway toward the Senate Chamber, which had been evacuated several minutes earlier.[6] With the Senate Chamber doors at the end of the hall before him, and about two dozen rioters behind him, Brackley was stopped by two US Capitol police officers.

---

[5] Exhibit 6: Public video at 0:14 (Brackley briefly seen towards the right side of the image, in the Crypt as rioters nearby chant).
[6] Exhibit 8: Capitol Security footage of Brackley walking through the Rotunda, 2:35 p.m.



*Video of Brackley halted by officers near Senate chamber (in blue), Exhibit 9 at 6:45*

### Assault of U.S. Capitol Police Officers

In the hallway, Brackley stood at the front of a group of a couple dozen other rioters. Two USCP officers, E.G. and M.S., told Brackley to "back up," and gave him a gentle push backwards with one hand. Brackley did not retreat. He asked where Nancy Pelosi's office was, and others behind him shouted her name. The officers spoke to Brackley for about 30 seconds before Brackley turned to the crowd behind him and shouted, "let's go!" He then leaned forward and with both elbows extended outward pushed through the two officers, leading the crowd behind him further into the hallway, towards the Senate Chamber. At the time, about 2:41 p.m., the Senate floor had just recently been evacuated, and U.S. Capitol Police officers continued to evacuate the House Chamber.



*Video of Brackley assaulting U.S. Capitol Police officers, Exhibit 9 at 7:15*

As Brackley led the rioters further down the hallway, a larger group of officers, dressed in riot gear, entered the hallway from the opposite end (near the Senate Chamber door) and halted Brackley.[7] Brackley told the officers to "stand down," and "let us through," but the officers formed a line to try and back Brackley and the crowd away from the Senate Chamber.



*BWC footage of Brackley telling officers to stand down at 2:41 p.m., Exhibit 11*

---

[7] Exhibit 10: Capitol security footage of officers entering hall after Brackley's push, 2:41 p.m.

Brackley remained towards the front of the rioters as a standstill ensued for several minutes, with members of the crowd chanting and shouting expletives directed at Members of Congress, including, "fuck McConnell." The rioters then resumed pushing against the USCP police officers while chanting "USA."



*Video of rioters pushing police line near Senate Chamber, Exhibit 9 at 4:15; Exhibit 12 at 48:00*

Officers deployed chemical spray in the hallway, causing some rioters to retreat and temporarily incapacitating Brackley.[8] Brackley retreated to receive aid from others, 20 minutes after he had first entered the hallway.

---

[8]   *See* Exhibit 13: Video of Brackley retreating, at 26:51, https://www.youtube.com/watch?v=WUB814y5ns0&t=1612s.



*Photo of Brackley requiring aid in U.S. Capitol, Exhibit 14[9]*

Brackley exited the Capitol through the South Door at 3:05 p.m., over 40 minutes after first entering the building.[10]

### *Post-Arrest Statements*

On July 21, 2023, Brackley was arrested near his home and transported to FBI offices for booking. During transport, Brackley explained that on January 6, 2021, Brackley prayed in his hotel room, rose a new man, and everything that followed was God's plan. Brackley stated that he expected he would be arrested. Brackley also made comments that the Department of Justice was corrupt and referred to the FBI as the Gestapo.

During the booking process, Brackley repeatedly asked FBI agents, "is this the job you signed up to do in the FBI?" While reviewing information presented by a U.S. Deputy Marshal regarding prisoner voting rights, Brackley stated that "votes don't mean the same anymore."

---

[9] *See also* Exhibit 15: Capitol Security footage of Brackley receiving aid from USCP at 3:00 p.m.

[10] *See* Exhibit 16: Capitol Security footage of Brackley's exit at 3:05 p.m.

## III.     THE CHARGES AND PLEA AGREEMENT

On July 17, 2023, Brackley was charged via complaint with eight counts: 18 U.S.C. §§ 111(a)(1); 231(a)(3); 1752(a)(1), (2) & (4); and 40 U.S.C. §§ 5104(e)(2)(D), (F) & (G). On January 18, 2024, pursuant to a plea agreement, Brackley pleaded guilty to a one-count information charging him with violating 18 U.S.C. § 111(a)(1). ECF Nos. 20, 24.

## IV.     STATUTORY PENALTIES

Brackley now faces sentencing on 18 U.S.C. § 111(a)(1). As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, the defendant faces up to 8 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

## V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The parties have agreed to the below guidelines calculation:

<u>Count One: 18 U.S.C. § 111(a)(1)</u>

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[11] | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | <u>+6</u> |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | <u>-3</u> |
| **Total Adjusted Offense Level:** | | **17** |

*See* ECF No. 24, Plea Agreement at ¶ 4(A).

---

[11] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. The parties agree that Section 4C1.1 does not apply in this case because "the defendant used violence or credible threats of violence in connection with the offense" and therefore that the defendant is ineligible to receive the adjustment pursuant to U.S.S.G. § 4C1.1(a)(3). *See* Plea Agreement at ¶ 4(C).

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 55, Plea Agreement at ¶ 4(B). Accordingly, based on the government's calculation of the defendant's total adjusted offense level, after acceptance of responsibility, at 17, Brackley's Guidelines imprisonment range is 24 to 30 months' imprisonment.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Brackley's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Not only did Brackley enter the U.S. Capitol despite clearly observing police attempts to quell the violent riot, but once inside, Brackley repeatedly joined other rioters who were actively pushing past officers to get deeper into the Capitol. When Brackley had nearly reached the Senate Chamber, he refused to heed the instructions of the U.S. Capitol police officers who tried to turn him around, and instead leaned forward, put his elbows out, and used his body weight to shove the officers out of the way so that he and other rioters behind him

could advance. Even after officers in riot gear rushed into the hall to stop Brackley and the other rioters from reaching the Senate chamber, Brackley told them to stand down, and remained at the front of an increasingly violent crowd until he was incapacitated by pepper spray. The nature and circumstances of Brackley's offense were of the utmost seriousness, and fully support the government's recommended sentence of 28 months' incarceration.

### B. The History and Characteristics of the Defendant

Brackley is 40 years old and the owner of electrical contracting and real estate companies in Maine. Although Brackley lacks any criminal history prior to the instant offense, the seriousness of his conduct on January 6, and in particular his willingness to assault officers in the hallway leading directly to the Senate Chamber, weighs heavily in favor of a significant sentence of incarceration here.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Brackley's criminal conduct on January 6 was the epitome of disrespect for the law. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). As we approach another election, the partisan rhetoric that

preceded the January 6th attack on the U.S. Capitol continues. The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[12] The courts must send a clear message to the American public that another attack on our institutions, or the officers charged with defending them, will be met with certain and severe consequences. This weighs strongly in favor of incarceration.

### Specific Deterrence

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. While Brackley has recently accepted responsibility for his actions, such acceptance only came when Brackley finally faced the consequences of his actions. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Moreover, Brackley has not actually shown any *remorse* for his violent conduct on January 6. Following his arrest, he gave no indication of regret for his actions, instead telling federal agents that what happened was "God's plan." Rather than reflect on the wrongfulness of his assault on police officers, Brackley compared the officers arresting him to Nazis.

Perhaps most worryingly, Brackley commented to these agents that "votes don't mean the same anymore." Especially as we approach another presidential election, Brackley's sentence must

---

[12] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

be sufficient to provide specific deterrence from committing future crimes of violence. The sentence must send a clear message that violence cannot replace the vote, that no political opinions justify the assaultive behavior he engaged in on January 6, 2021. Brackley's concerning comments support not only a lengthy sentence of incarceration, but a period of supervised release thereafter.

### E.    The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted

disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[13]

---

[13] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[14] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *U.S. v. Daniel Phipps*, 21-cr-44 (CJN), the Court sentenced the defendant to 27 months' incarceration and 36 months' probation for conduct somewhat less severe than Brackley's. Like Brackley, Phipps assaulted multiple officers by pushing them (and grabbing a baton) but not otherwise attacking them or using weapons. Both defendants assaulted the officers in the context of refusing to comply with orders to vacate a restricted area. And while both defendants accepted responsibility via plea, neither showed remorse for their violent and dangerous behavior.

However, Phipps's actions were less severe than Brackley's in a few key respects. First, Phipps assaulted officers outside the Capitol, long after he had left the building; Phipps did not engage in any violent or destructive behavior inside. Brackley, on the other hand, not only assaulted officers E.G. and M.S. near the Senate Chamber, but did so in the context of *leading* other rioters deeper into the Capitol—his assault allowed the dozens of rioters behind him to get closer to the Senate Chamber. Moreover, Brackley's assault occurred hours earlier, at a much more critical time in the overall riot—Members of Congress were still being evacuated as Brackley

---

[14] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

barreled his way towards the Senate chamber; he created much greater danger. The greater severity of Brackley's assault warrants a more severe sentence.[15]

Another case before this Court where the defendant engaged in similar conduct on January 6 is *U.S. v. Garrett Miller*, 21-cr-119 (CJN). Miller's overall conduct was worse—he engaged in violence at the U.S. Capitol for a longer period than Brackley and made threatening statements both before and after the events of January 6. As a result, Miller faced additional felony charges, and a higher guidelines range of 37-46 months. Miller was ultimately sentenced within that range, to 38 months' incarceration and 36 months' probation. However, both Brackley and Miller pled to a top count of 18 U.S.C. 111(a), and their assaultive conduct was similar: both assaulted police officers inside the Capitol, while leading other rioters, in the context of refusing to obey police orders to leave, and neither defendant used a weapon or caused injury. Moreover, both Brackley and Miller witnessed violence outside the Capitol building but entered anyway because they opposed the results of the 2020 presidential election. Inside the Capitol, in addition to assaulting officers, both defendants moved through multiple police lines but were ultimately stopped in the hallway between the Rotunda and the Senate Chamber. As with Miller, the severity of Brackley's conduct, and the danger he created, warrants a sentence within his guidelines range.

*United States v. Kevin Creek*, 21-cr-645-DLF, also involved a defendant who pled guilty to one count of violating 18 U.S.C. § 111(a)(1) and faced a guidelines range of 24-30 months incarceration. While on the Lower West Terrace, Creek shoved one officer and kicked another, and threw a thick strap with a metal buckle at the line of officers, but did not injure the officers.

---

[15] Phipps pled guilty to an indictment that included one count of 18 U.S.C. § 231(a)(3) and four misdemeanor charges in addition to the top count of 18 U.S.C. § 111(a). The Court calculated Phipps' guidelines range to be 24-30 months, the same range as Brackley's.

As with Brackley, Creek had no criminal history, and despite pleading guilty, evinced little remorse for his actions when interviewed by federal agents. However, Creek never entered the U.S. Capitol. Judge Friedrich sentenced Creek to 27 months' imprisonment and 12 months supervised release. As with Phipps, Brackley's conduct was worse, and warrants a more severe sentence.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[16] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victims in this case, Officer M.S. and Captain E.G., did not suffer bodily injury as a result of Brackley's assault. The parties

---

[16] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property . . . including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

19

agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Brackley must pay $2,000 in restitution, which reflects in part the role Brackley played in the riot on January 6.[17] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Brackley's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR at ¶ 135.

## VIII.  FINE

The defendant's conviction for violation of 18 U.S.C. § 111(a)(1) subjects him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the defendant has not shown an inability to pay, thus pursuant to the considerations

---

[17] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e). The guidelines fine range here is $10,000 to $95,000. U.S.S.G. § 5E1.2(c).

## IX.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 28 months of incarceration, 24 months of supervised release, $2,000 in restitution, and the mandatory assessment of $100.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: */s/ Alexander Diamond*
ALEXANDER M. DIAMOND
NY Bar No. 5684634
Assistant United States Attorney
District of Columbia
601 D St. NW
Washington, DC 20530
(202) 506-0427
Alexander.Diamond@usdoj.gov